IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WESLEY TODD DICKIE          )
                            )
v.                          )          No. 3:11-0585
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security )

To: The Honorable Thomas A. Wiseman, Jr., Senior District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) should be denied.

## I. INTRODUCTION

The plaintiff filed applications for DIB and SSI on May 22, 2008, alleging an onset date of March 10, 2008, due to intestinal malrotation. (Tr. 131.) His applications were denied initially and upon reconsideration. (Tr. 54-65.) A hearing before Administrative Law Judge ("ALJ") William

Churchill was held on April 8, 2010. (Tr. 24-47.)  The ALJ delivered an unfavorable decision on June 21, 2010 (tr. 14-23), and the plaintiff sought review by the Appeals Council. (Tr. 108.)  On May 20, 2011, the Appeals Council denied the plaintiff's request for review (tr. 1-3) and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on May 3, 1981, and was 26 years old as of March 10, 2008, his alleged onset date. (Tr. 110, 114.)  The plaintiff completed the eleventh grade and worked as a cabinet builder and retail stocker. (Tr. 43, 132, 136.)

## A. Chronological Background: Procedural Developments and Medical Records

On March 28, 2002, the plaintiff was hospitalized at the Skyline Medical Center after complaining that he had experienced "several episodes of severe abdominal pain" during the past year. (Tr. 293.)  A diagnostic laparotomy on April 1, 2002, indicated that the plaintiff had "intestinal malrotation suggesting intermittent volvulus or internal hernia."[1]  *Id.*  In June of 2002, the plaintiff underwent corrective surgery for intestinal malrotation at the Vanderbilt University Medical Center ("VUMC").[2] (Tr. 318.)

---

[1] Intestinal malrotation is a birth defect that can cause the twisting of the intestines. WebMD, "Malrotation of the Intestines," at http://www.webmd.com/hw-popup/malrotation-of-the-intestines. A volvulus is "an intestinal obstruction due to a knotting and twisting of the bowel." Dorland's Illustrated Medical Dictionary 2054 (30th ed. 2003) ("Dorland's").

[2] No record of that surgery is in the record, but it is noted in the January 18, 2004, discharge summary and confirmed by the plaintiff's testimony. (Tr. 33, 318.)

On January 7, 2004, the plaintiff went to the emergency room at VUMC with complaints of abdominal pain that he reported was a "ten out of ten." (Tr. 323.) A CT scan showed malrotation of the plaintiff's bowel "with a small segment of dilated small bowel in the right abdomen suggesting early obstruction." (Tr. 322.) He was admitted to the hospital and on January 9, 2004, he underwent an exploratory laparotomy and Ladd's procedure to further correct his intestinal malrotation.[3] (Tr. 318-319.) He was discharged in "good" condition on January 11, 2004. (Tr. 318.) On January 22, 2004, the plaintiff was again hospitalized at VUMC after complaining of "unrelenting abdominal pain." (Tr. 316-17.) He was diagnosed with dehydration and constipation, and was discharged the next day. *Id.* In February of 2004, the plaintiff was hospitalized for two days at VUMC with complaints of abdominal pain and constipation, and in September of 2004, he presented to the VUMC emergency room, and was diagnosed with constipation and pneumonia, and was prescribed Levaquin.[4] (Tr. 306-310.)

On March 8, 2005, the plaintiff presented to the emergency room at VUMC with complaints of "abdominal pain for a somewhat extended period of time," describing his pain as "10/10 currently."[5] (Tr. 304.) CT scans of the plaintiff's abdomen and pelvis showed "identification of malrotation, without evidence of obstruction," and a "[n]onobstructive bowel gas pattern." (Tr. 302-

---

[3] The Ladd's procedure is the standard corrective measure for intestinal malrotation in adults. JSLS: Journal of the Society of Laparoendoscopic Surgeons, "Laparoscopic Treatment of Intestinal Malrotation in Adults," at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3015603/.

[4] Levaquin is prescribed for sinusitis. Saunders Pharmaceutical Word Book 402 (2009) ("Saunders").

[5] Apparently, the plaintiff had gone to "another hospital" on March 7, 2005, where he was diagnosed with nephrolithiasis (tr. 301, 304), which is a kidney stone. *See* Dorland's at 1230. The record does not appear to include any documentation from the "other hospital."

303.) He was hospitalized overnight, during which time his "pain resolved" and he was discharged "in excellent condition with no medications." (Tr. 298.)

Between March and October of 2005, the plaintiff presented to Dr. Robert Ladd, a doctor of osteopathic medicine, on multiple occasions with complaints of abdominal, chest, and back pain, asthma, pleurisy,[6] and GERD. (Tr. 207-218.) C. Lynne Medley, an examining nurse at Dr. Ladd's office, diagnosed the plaintiff with pleurisy, GERD, constipation, chronic abdominal pain, neck and back pain, and cocaine and alcohol abuse, and prescribed Percocet, Robaxin, Phenergan, Colace, Medrol Dosepak, Neurontin, Advaire, and Toradol.[7] *Id.* Ms. Medley encouraged the plaintiff to quit smoking and to exercise. *Id.*

Between February and June of 2008, the plaintiff presented to the emergency room at the Hendersonville Medical Center on five occasions with complaints of chest pain, a cough, severe abdominal pain, and pleurisy-type symptoms. (Tr. 262-90.) He was hospitalized for six days in March of 2008, during which time he had an exploratory laparotomy and hemicolectomy.[8] (Tr. 183-90, 272-73.) X-rays and CT scans of the plaintiff's chest and abdomen revealed "atelectasis[[9]] . . .

---

[6] Pleurisy is the inflammation of the double membrane (pleura) lining that surrounds each lung and can cause chest pain. Dorland's at 1451.

[7] Percocet is a painkiller and anti-inflammatory medication; Robaxin is a skeletal muscle relaxant; Phenergan is a decongestant; Colace is a laxative; Medrol Dosepak is anti-inflammatory medication; Neurontin is used to treat seizures and "postherpetic neuralgia," a condition affecting nerve fibers and skin; Advaire is used to treat asthma, COPD, and bronchitis; and Toradol is a nonsteroidal anti-inflammatories (NSAID) used to treat moderately severe acute pain. Saunders at 15, 175, 433, 488, 546, 551, 619, 713.

[8] A hemicolectomy is the removal of either the right or left side of the colon. WebMD, "Hemicolectomy," at http://dictionary.webmd.com/terms/hemicolectomy.

[9] Atelectasis is the "incomplete expansion of the lung or portion of a lung" or "collapse of a lung that had once been expanded." Dorland's at 171.

with small bilateral pleural effusions" and "[e]vidence of congenital midgut malrotation," and that his atelectasis had "resolved" and his "[l]ungs and pleural space are clear." (Tr. 265, 270, 281.) The plaintiff was diagnosed with "[p]ersistent recurrent chest wall pain and pleurisy," acute bronchitis, and acute cecal volvulus. (Tr. 261, 264, 267.) He was prescribed Decadron, Prednisone, Toradol, Mepergon, Naprosyn, Flexeril, Dilaudid, Zofran, Phenergan Levaquin, and Cipro.[10] (Tr. 261-67.)

On June 9, 2008, the plaintiff presented to the Salvus Center in Gallatin, complaining of chest pain, shortness of breath accompanying movement, and abdominal pain. (Tr. 258.) Dr. Ted Hill, an examining physician, diagnosed the plaintiff with pleuritic chest pain and possible pneumonia, noted he had "recent abdominal surgery for intestinal malrotation," prescribed Tramadol,[11] and ordered a blood test. (Tr. 258-260.)

On July 28, 2008, Dr. James N. Moore, a nonexamining Disability Determination Services ("DDS") consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment (tr. 231-38) and opined that the plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, could stand/walk/sit for six hours in an eight hour workday, had unlimited ability to push/pull, and should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (Tr. 231, 235.)

On July 23, 2008, the plaintiff presented to Dr. Bruce Davis, a DDS consultative examining physician, and underwent a pulmonary function test ("PFT"). (Tr. 226-30.) Dr. Davis diagnosed the

---

[10] Decadron and Prednisone are corticosteroidal anti-inflammatories; Mepergan is a narcotic analgesic; Naprosyn is a NSAID; Flexeril is a skeletal muscle relaxant; Dilaudid is a narcotic analgesic; Zofran is anti-nausea medication that is prescribed to prevent vomiting, and Cipro is an antibiotic. Saunders at 162, 205, 227, 294, 437, 479, 575, 779.

[11] Tramadol is prescribed for moderate to severe chronic pain. Saunders at 715.

plaintiff with "mild shortness of breath with exam maneuvers but no respiratory distress, clubbing, [or] cyanosis" and "clear breath sounds (no wheeze, rales, rhonchi, rub)." (Tr. 226.)

On August 7, 2008, the plaintiff returned to the Salvus Center with complaints of anxiety, pleurisy, constipation, and diarrhea. (Tr. 255-56.) Denise Billingsley, an examining nurse practitioner, diagnosed the plaintiff with pleurisy, non-specific abdominal pain, tobacco use disorder, and depression. (Tr. 255.) Ms. Billingsley opined that the plaintiff had "periods of days when his pain is minimal and he is very active then days like today where pain is severe and he can do nothing." (Tr. 256.) He was prescribed Percocet, Claritin, Prednisone, and Chantix.[12] *Id.* On August 19, 2008, the plaintiff complained to Dr. Hill of pain and swelling in his right thumb and related that he had been "going through an old house with junk and working on old cars and his lawn mower." (Tr. 252.) The plaintiff did not make any other complaints on that visit.

While incarcerated in the Sumner County Jail in September and October of 2008, and between March and August of 2009, the plaintiff complained of a sinus infection, chest pain, tooth pain, a spider bite, left knee pain, wrist pain, and lung pain, and only once complained about abdominal pain. (Tr. 428-62.) An x-ray of the plaintiff's abdomen revealed "[n]o acute cardiopulmonary disease," "[a]bdomen is nonspecific acute disease," and "[m]arked stool in the left side of the colon." (Tr. 462.) The plaintiff was diagnosed with a cough, an insect bite, an upper respiratory infection, and was prescribed Robitussin, Amoxcil, Tylenol, Bcatrim, Ibuprofen, and Naproxen.[13]

---

[12] Claritin is a decongestant and Chantix is a smoking cessation aid. Saunders at 148, 165.

[13] Bactrim is an antibacterial and Naproxen is a NSAID prescribed for arthritis and other mild to moderate pain. Saunders at 78, 479.

On October 14, 2008, Dr. Frank M. Pennington, a nonexamining DDS physician,[14] completed a physical RFC assessment (tr. 338-43) and opined that the plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, could stand/walk/sit for six hours in an eight hour day, and was unlimited in his ability to push/pull. (Tr. 339.)

In January and February of 2009, the plaintiff presented to the emergency room at Hendersonville Medical Center on two occasions with complaints of abdominal pain, chest pain, and coughing. (Tr. 344-71.) The plaintiff related that his abdominal pain was a ten on a scale of one to ten. (Tr. 360.) A CT scan of his abdomen and an x-ray of his chest showed "a loop of mildly distended small bowel at the level of anastomosis with questionable mild wall thickening and enteritis"[15] and "possible atelectasis and pneumonia," but no obstruction was "appreciated." (Tr. 369-70.) He was diagnosed with "abdominal pain of unknown cause" and "possible pneumonia" (tr. 345, 359) and was prescribed Phenergan, Lortab, Hydrocodone, Amoxicillin, Medrol Dosepak, Naproxen, Tussionex, and Guaifenesin.[16] (Tr. 351, 366.) Upon discharge, the plaintiff reported that his pain was a seven out of ten on January 3, 2009, and a three out of ten on February 3, 2009. (Tr. 348, 361.)

On January 16, 2010, the plaintiff presented to the emergency room at Gateway Medical Center with complaints of lower abdominal pain. (Tr. 394-95). A CT scan revealed no obstruction

---

[14] The plaintiff noted that Dr. Pennington's medical license had been revoked in 1995, and 1999, as a result of "two felony convictions, as well as unprofessional, dishonorable, or unethical conduct," but he was issued a restricted license in July of 2002, for the "administrative practice of medicine." Plaintiff's counsel brought this issue to the ALJ's attention. Docket Entry No. 14, at 8; tr. 27.

[15] Enteritis is the inflammation of the small intestine. Dorland's at 619.

[16] Lortab is a narcotic analgesic and an antipyretic, Tussionex is an antihistamine, and Guaifenesin is a decongestant. Saunders at 330, 415, 733.

but showed "[f]indings consistent with malrotation with the duodenom lacking its normal C-loop configuration," the cecum "relatively high within the abdomen and anteriorly displaced," and "inflammatory changes deep within the pelvis around the sigmoid colon, which probably represent[ed] early acute diverticulitis." (Tr. 400.) The plaintiff was diagnosed with acute uncomplicated diverticulitis,[17] treated with antibiotics, and discharged on January 19, 2010.

On February 9, 2010, the plaintiff returned to the emergency room at Gateway Medical Center with complaints of shortness of breath and abdominal pain, and he was hospitalized for two days. (Tr. 414-18.) A CT scan of the plaintiff's abdomen and pelvis showed that the inflammation caused by prior "mild diverticulitis" had resolved with "some residual scarring" and that there was "scarring in the sigmoid colon" but no evidence of obstruction, early "crowding" in the lung bases, and "[no] active disease is felt to be present other than the possibility of constipation." (Tr. 420-21.) The plaintiff was diagnosed with a lesion near his colon and pleurisy and was treated with antibiotics and intravenous hydration. (Tr. 407, 415, 463.) At discharge, the plaintiff related that his "pain [had] improved" and that it was a six out of ten. (Tr. 409.)

The plaintiff submitted additional medical records to the Appeals Council on May 20, 2011, after the ALJ's June 21, 2010, decision. (Tr. 4-5, 20.) The Appeals Council considered the additional evidence but declined to review the ALJ's decision. (Tr. 1-3.) When the Appeals Council considers new evidence but declines to review the plaintiff's application for disability insurance benefits on the merits, the Court "cannot consider that new evidence in deciding whether to uphold,

---

[17] Diverticulitis is the "inflammation of a diverticulum, especially inflammation related to colonic diverticula, which may undergo perforation with abscess formation. Sometimes called left-sided appendicitis." Dorland's at 556.

modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)).

The Court can issue a remand order under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the additional evidence only if the plaintiff shows that the evidence is "new" and "material," and provides "good cause" for failing to include the evidence in the record prior to the ALJ's decision. 42 U.S.C. § 405(g). *See also Templeton v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 458, 463-64, 2007 WL 413906 (6th Cir. Feb. 8, 2007), *cert. denied*, 552 U.S. 814, 128 S.Ct 354, 169 L.Ed.2d 18 (2007) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001)); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir.2006); *Cline*, 96 F.3d at 148 (citing *Cotton*, 2 F.3d at 695-96); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). However, since the plaintiff did not request a sentence six remand the Court's review is limited to the evidence presented to the ALJ.

**B. Hearing Testimony**

At the hearing before the ALJ, the plaintiff was represented by counsel, and both the plaintiff and Eileen Gray, a vocational expert ("VE"), who was present by telephone, testified. (Tr. 26-47.) The plaintiff testified that he completed eleven years of schooling and that he was working toward obtaining his GED. (Tr. 28.) He related that he did not possess a driver's license, relied on his family for transportation, and had worked at Country Cabinets as a cabinet maker. (Tr. 29-30.)

The plaintiff explained that he stopped working in March of 2008, because he began "experiencing really bad abdominal pain, went to the emergency room, and they had to put me in emergency surgery." (Tr. 30) He related that he has suffered from abdominal pain for "ten to twelve

years now," had corrective surgery for intestinal malrotation in 2002 that provided only temporary relief, and in 2008 had twelve inches of his colon removed "where it got in a knot and died." (Tr. 31, 33.) The plaintiff testified that his abdominal pain causes him to be "balled up and in constant pain for . . . a week or two at a time." (Tr. 32.) The plaintiff testified that he presented to emergency rooms for treatment because he could not afford the care of private physicians and that he does not go to the emergency room every time he has pain because he has incurred significant debt. (Tr. 31-32.)

The plaintiff related that he experiences abdominal pain three or four times a month; that he "deal[s] with it just by sitting around on the couch, but then other times, [he] can't get out of bed;" that he has been fired from jobs due to absences from work; and that his level of pain is a ten on a scale of one to ten. (Tr. 35.) The plaintiff then asserted that Dr. Heuman[18] at Gateway Medical Center wants to perform a third abdominal surgery and remove his colon because he thinks that the plaintiff suffers from diverticulitis and does not believe his condition will improve. (Tr. 36.) He related that his prescribed pain medications and antibiotics provide only temporary relief. (Tr. 40.)

The plaintiff testified that his pleurisy hinders his ability to breath and to stand up straight, causes him to take "30 minutes [to] walk from the kitchen to the living room," and forces him to miss between 12 and 20 days of work per month. (Tr. 39.)

The VE, consistent with the Dictionary of Occupational Titles, classified the plaintiff's past relevant work as a cabinet maker as medium and skilled and as a retail stocker as heavy and semiskilled. (Tr. 43.) The ALJ asked the VE to consider what type of work the plaintiff could

_____

[18] Dr. Heuman's name is spelled "Humar" and "Heron" in the transcript of the hearing. (Tr. 36, 39.)

perform if he could, in an eight hour day, sit up to six hours, stand/walk four to six hours, and lift/carry at least twenty pounds occasionally and 10 pounds frequently; could occasionally crawl, squat, stoop/bend, concentrate "for extended periods of time," "respond appropriately to routine changes in work environment," and "perform simply repetitive tasks;" and was not able to climb ladders or work at heights. (Tr. 43.) The VE answered that the plaintiff would be precluded from performing his past relevant work but concluded that he could perform sedentary and unskilled work as "a final assembler in optical goods," "a waxer in glass products," or a "bench hand in jewelry or silverware." (Tr. 44.) The VE testified that an unskilled worker would not be able to maintain employment if he were absent from work for more than two days a month and that "the toleration by an employer for absenteeism for unskilled workers would be less than it would be for semiskilled workers or skilled workers" because it is "much easier to replace an unskilled worker." (Tr. 45.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on June 21, 2010. Based on the record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since March 10, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: diverticulitis and pleurisy (20 CFR 404.1520(c) and 416.920(c)).

* * *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 4 to 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant could only occasionally crawl, squat, stoop, kneel, or bend, but he would be able to climb ladders and work at heights. The claimant can concentrate for extended periods of time and he would be able to respond appropriately to routine changes in a work environment. However, the claimant would be limited to performing simple, repetitive tasks.

\* \* \*

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7.   The claimant was born on May 3, 1981 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11.    The claimant has not been under a disability, as defined by the Social Security Act, from March 10, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-20).


## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. § 404.1520(b); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). *See Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 24, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 20 C.F.R. § 404.1520(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. § 404.1520(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing

her past relevant work . . . ."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The five step inquiry

In this case, the ALJ resolved the plaintiff's claim at step five of the five step process. (Tr. 19.) At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since March 10, 2008, his alleged onset date. (Tr. 16.) At step two, the ALJ determined that the plaintiff's diverticulitis and pleurisy were severe impairments. *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ concluded that the plaintiff could not perform any past relevant work but had the RFC to

> lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 4 to 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant could only occasionally crawl, squat, stoop, kneel, or bend, but he would be unable to climb ladders and work at heights. The claimant can concentrate for extended periods of time and he would be able respond appropriately to routine changes in a work environment. However, the claimant would be limited to performing simple, repetitive tasks.

(Tr. 16-17.) At step five, the ALJ found that the plaintiff's RFC allowed him to work as an optical final assembler, a jewelry bench hand assembler, and a waxer. (Tr. 19-20.)

## C. The Plaintiff's Assertions of Error

The plaintiff contends that the ALJ erred in failing to explain the basis for his credibility determination and that his decision does not articulate consideration of factors relevant to the evaluation of credibility set forth in 20 CFR §§ 404.1529(c)(3), 416.929(c)(3), and SSR 96-97. Docket Entry No. 14, at 13-14. Next, the plaintiff argues that the ALJ did not understand the nature of his disabling impairment and that his decision does not reflect consideration of all evidence in the record. Docket Entry No. 14, at 15. The plaintiff also contends that the ALJ's RFC determination

and the jobs that he concluded the plaintiff could perform are not supported by substantial evidence in the record. Docket Entry No. 14, at 18-19.

### 1. The ALJ properly evaluated the plaintiff's subjective complaints of pain.

The plaintiff contends that the ALJ erred in evaluating the credibility of his subjective complaints of pain since the ALJ failed to "explain the basis for his credibility determination" and did not "articulate consideration of factors relevant to the evaluation of credibility." Docket Entry No. 14, at 13. Specifically, the plaintiff argues that "[t]he ALJ offered up the legal boilerplate generated by the SSA's [Social Security Administration's] decisional software" and did not apply the factors provided in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). *Id.* at 14.

In evaluating the plaintiff's credibility, the ALJ found that

> [w]hile it is noted the claimant, who reported 2 to 3 days of worsening abdominal pain, required surgical correction for an acute cecal volvulus on March 11, 2008, the evidence does not suggest the degree of ongoing pain alleged. In fact, treatment records show when examined two months later the claimant, who made no mention of residual abdominal pain, demonstrated a soft, nontender abdomen on physical examination. These facts, the results of a June 7, 2008 examination, which also revealed a nontender abdomen, and the moderate respiratory restrictions identified on pulmonary function studies administered on July 23, 2008, do not support a conclusion the claimant, who has also intermittently reported abdominal pain secondary to pleurisy, has been precluded from working since March 10, 2008, his alleged onset date.

> While this evidence, evidence that shows the claimant required occasional emergency room care for exacerbated chest/lung pain, symptomatology that typically resolved with medication with no inpatient care required suggests symptoms that would preclude more exertionally demanding work, including medium work as proposed by the State Agency physician, the claimant's medical history and acknowledged ability to engage in activities, including working on automobiles and cleaning out an old home, does not establish debilitating functional limitations. Further supporting this conclusion are medical records dated October 3, 2008, which show despite his

allegations of exacerbated chest/abdominal pain, no treatment was found to be warranted and questions regarding drug-seeking behavior were raised.[19]

This evidence, considered in combination with his limited need for medical intervention during 2009, does not support the degree or chronicity of symptoms currently alleged. In fact, this evidence and treatment records from 2010 show during periods of exacerbated symptoms, and even at times when the symptoms alleged have significantly exceeded objective medical findings, the claimant despite financial constraints has pursued medical care. Consequently, the undersigned finds the degree of symptomatology asserted between March 10, 2008 and December 31, 2009, a period when minimal medical care was pursued, far exceeds the evidence of record. Similarly, while it is noted in January and February 2010 the claimant required inpatient hospital care for acute uncomplicated diverticulitis, his demonstrated abilities on physical examination, abilities that included a normal gait, do not support the functional limitations currently asserted, such as an inability to walk from the living room to the kitchen in under 30 minutes.

(Tr. 18) (internal citations omitted).

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F.3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL

---

[19] As the defendant pointed out, *see* Docket Entry No. 15, at 13, the ALJ incorrectly cited the record in support of his reference to possible drug seeking behavior, although the nurse at Salvus Center suggested in August of 2008, that the plaintiff "may be drug seeking" and Dr. Ladd's nurse noted the plaintiff's recent cocaine use in April of 2005, and "questioned" the plaintiff "on his perception of request for meds" in May of 2005. (Tr. 215-18, 256.)

374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. See 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[20] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

---

[20] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

In this case, the ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the first prong of the *Duncan* test. (Tr. 17.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).[21]

In making his credibility determination, the ALJ relied on the plaintiff's symptomatology, objective medical tests, and activities of daily living. (Tr. 18.) First, after the plaintiff had a hemicolectomy on March 11, 2008, a March 24, 2008, CT scan showed no obstructions in his colon. (Tr. 182-86.) In May and June of 2008, the plaintiff presented to Hendersonville Medical Center and was found to have a "[n]ontender" abdomen (tr. 176-81), and on June 9, 2008, Dr. Ted Hill opined that the plaintiff's abdomen was "soft" and "nontender." (Tr. 259.) Additionally, the ALJ addressed

---

[21] The seven factors under 20 C.F.R. §§ 404.1529(c)(3) and 416.923(c)(3) include: (i) the plaintiff's daily activities, (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms, (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.923(c)(3).

the severity of the plaintiff's pleurisy by noting that the plaintiff's July 23, 2008, PFT revealed that he had "mild shortness of breath . . . but no respiratory distress, clubbing, cyanosis; [and] clear breath sounds (no wheezes, rales, rhonchi, rub)." (Tr. 18, 226.)

CT scans of the plaintiff's abdomen in January and February of 2010, revealed that he had "early" or "mild" diverticulitis but that there was "[n]o evidence of obstruction" and that "[n]o active current disease is felt to be present other than the possibility of constipation." (Tr. 400, 420-21.) The ALJ also determined that the plaintiff's activities of daily living did not support his subjective complaints of pain since on August 19, 2008, the plaintiff reported that he injured his right thumb while "going through an old house with junk and working on old cars and his lawn mower. . . ."[22] (Tr. 252.)

In sum, the ALJ complied with 20 C.F.R. §§ 404.1529(c)(3) and 416.923(c)(3) and with Social Security Ruling 96-7p by determining that the plaintiff's symptomatology, prescribed treatment, and activities of daily living indicate that his impairments cause him a certain amount of pain, but that same record medical evidence does not support his subjective complaints that his pain is disabling.

---

[22] The defendant points out that, while the plaintiff was incarcerated in the Sumner County Jail in September and October of 2008, and from March 12, 2009, to August 24, 2009, he complained of "minor problems," and only once complained of abdominal pain and chest pain. Docket Entry No. 15, at 4. Actually, the plaintiff also complained of lung pain in the days before his complaint of abdominal pain. (Tr. 454-59.) An x-ray of the plaintiff's abdomen and chest showed "[n]o acute cardiopulmonary disease," "[a]bdomen is nonspecific acute disease," and "[m]arked stool in the left side of the colon." (Tr. 462.) However, as the defendant acknowledged, the ALJ did not refer to any medical records from the Sumner County Jail. Docket Entry No. 15, at 14.

**2. The ALJ's decision reflects an understanding of the plaintiff's impairment and full consideration of all the evidence in the record.**

The plaintiff contends that the ALJ does not understand "the nature of [his] disabling impairment" and that he failed to consider all of the record evidence. Docket Entry No. 14, at 15-18. Specifically, he argues that the ALJ erred in concluding that he suffered from diverticulitis since the record shows that he has "a far more serious problem that is structural in nature: intestinal malrotation and cecus volvulus."[23] *Id.* at 15.

The ALJ was aware of the plaintiff's intestinal malrotation and cecal volvulus since he referenced the plaintiff's March 11, 2008, hemilectomy. (Tr. 18, 273.) Next, as discussed *supra*, the record medical evidence did not support the plaintiff's assertion that his intestinal malrotation continued to be a severe impairment. A March 24, 2008, x-ray showed no obstructions in his colon. (Tr. 182, 280.) In May and June of 2008, the plaintiff presented to Hendersonville Medical Center and was found to have a "[n]ontender" abdomen. (Tr. 176-81.) On June 9, 2008, Dr. Hill opined that the plaintiff's abdomen was "soft" and "nontender." (Tr. 259.) Finally, CT scans of the plaintiff's abdomen in January and February of 2010, revealed that he had "early" or "mild" diverticulitis but that there was "[n]o evidence of obstruction" and that "[n]o active current disease is felt to be present other than the possibility of constipation." (Tr. 400, 420-21.)

Simply put, although the plaintiff displayed intermittent abdominal pain after his March 11, 2008, hemilectomy, it was not attributed to intestinal malrotation or cecal volvulus. In fact, the medical records from January and February of 2010, indicate that his abdominal pain–at least during early 2010–was likely caused by diverticulitis. (Tr. 378-79, 420-21, 463.) Thus, there is substantial

---

[23] The plaintiff does not argue that the ALJ erred in respect to his ruling related to pleurisy, the other severe impairment the ALJ listed.

evidence in the record to support the ALJ's conclusion that the plaintiff's only current or recent impairment was diverticulitis.[24]

### 3. The ALJ's RFC determination is supported by substantial evidence in the record.

The plaintiff contends that the ALJ improperly determined the plaintiff's residual functional capacity by failing to enlist the opinion of a medical consultant. Docket Entry No. 14, at 19. Specifically, the plaintiff argues that the Court should direct the ALJ to "obtain either medical expert testimony or order a consultative examination by a digestive specialist to provide a sound medical basis for any decision as to Dickie's residual functional capacity." *Id.*

An individual's RFC is "a medical assessment of what that individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments." *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *8 (W.D.Mich. Sept. 29, 2009) (citing 20 C.F.R. § 404.1545). In this case, the ALJ concluded that

> [t]he claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 4 to 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant could only occasionally squat, stoop, kneel, or bend, but he would be unable to climb ladders and work at heights. The claimant can concentrate for extended periods of time and he would be able [to] respond appropriately to routine changes in a work environment. However, the claimant would be limited to performing simple, repetitive tasks.

---

[24] Since the medical records from January and February of 2010, indicate that the plaintiff's diagnosed diverticulitis was resolved and future flare-ups of diverticulitis could be remedied by antibiotics, which the plaintiff himself acknowledges, *see* Docket Entry No. 14, at 15; tr. 40, it may be that the ALJ erred in concluding that it remained a severe impairment but such an error did not prejudice the plaintiff.

(Tr. 16-17).  He also noted that in making that determination he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 17).

The plaintiff argues that the ALJ offered "his best lay opinion" in determining the plaintiff's RFC since the record did not contain a credible RFC assessment completed by a medical professional. Docket Entry No. 14, at 18.  The plaintiff's contention is without merit since the ALJ has complete authority to make a RFC determination. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. Aug. 18, 2009); *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 197 (6th Cir. Nov. 10, 2004).  While an ALJ should not "substitute his opinion for that of a physician," he is also "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe*, 342 Fed. Appx. at 157 (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).  Further, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual capacity finding." *Poe*, 342 Fed. Appx. at 157 (citing *Ford*, 114 Fed. Appx. at 197).

The ALJ also properly evaluated the record medical evidence before making his RFC determination.  He is not obligated to refer the plaintiff for a consultative evaluation unless he deems there is insufficient evidence in the record to make an RFC determination. *Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. Dec. 18, 2009) (citing 20 C.F.R. § 404.1517).  *See also Landsaw,* 803 F.2d at 214 ("[T]he regulations do not require an ALJ to refer a claimant to a

consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *Powell v. Astrue*, 2011 WL 3489995, at *4 (E.D. Ky. Aug. 9, 2011) ("The ALJ is not required, however, to order a consultative examination, but is instead authorized to order one when necessary."). The ALJ evaluated medical reports pertaining to the plaintiff's March 11, 2008, hemilectomy, emergency room visits, and CT scans, and reviewed the plaintiff's own statements regarding his daily activities before making his RFC determination. (Tr. 18.) Therefore, it is clear that he carefully considered the medical evidence in the record and that there is sufficient evidence in the record to support the RFC he assigned to the plaintiff.

### 4. The ALJ did not err in relying on the VE's testimony.

The plaintiff contends that "the ALJ's finding that [the plaintiff] could perform the jobs identified by the VE is not supported by substantial evidence." Docket Entry No. 14, at 19. Specifically, the plaintiff maintains that the ALJ's hypothetical question to the VE "did not take into account any level of absenteeism" that the plaintiff will experience as a result of his impairment. *Id.* The Regulations allow ALJs to rely on a VE at step five to determine whether a plaintiff is able to perform any work. 20 C.F.R. § 404.1560(c). The VE's testimony, in response to an ALJ's hypothetical question, will be considered substantial evidence "'only if that hypothetical question accurately portrays [the plaintiff's] individual physical and mental impairments.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)).

26

The plaintiff contends that because the ALJ did not take into account any potential absenteeism in his hypothetical question to the VE, "the VE's identification of jobs in response thereto cannot serve as a basis for carrying the Commissioner's burden at step five of the sequential process." Docket Entry No. 14, at 19. Although a hypothetical must accurately portray a plaintiff's impairments, an ALJ is required to incorporate only those limitations that he accepts as credible. *Infantado v. Astrue* 263 Fed. Appx. 469, 476-77 (6th Cir. 2009); *Griffeth*, 217 Fed. Appx. at 429. As discussed above, the ALJ, after evaluating the record medical evidence and the plaintiff's own statements, properly assessed the plaintiff's limitations, and the hypotheticals that he asked the VE reflected those assessments. (Tr. 45-47.) The ALJ concluded that the plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the positions of optical final assembler, jewelry bench hand assembler, and waxer, and this RFC determination is supported by substantial evidence in the record. (Tr. 19-20.)

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to

appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge